IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

RECEIVED
USDC CLERK, CHARLESTON, SC
2006 MAY -9 A 11: 29

| | |
|---|---|
| Herbert McCoy, | C. A. 2:05-2355-TLW-RSC |
| Plaintiff, | |
| -versus- | **REPORT AND RECOMMENDATION** |
| Mr. George Gintoli, Director, South Carolina Department of Mental Health; Mr. John Connery, South Carolina Department of Mental Health; Mr. Jonathan Ozmint, Director of South Carolina Department of Corrections, | |
| Defendants. | |

This civil rights action pursuant to 42 U.S.C. § 1983[1] brought by an individual proceeding pro se and in forma pauperis, is before the undersigned United States Magistrate Judge for a report and recommendation on the parties' summary judgment motions. 28 U.S.C. § 636(b).

---

[1] Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of Section 1983, titled a civil action for deprivation of rights reads in relevant portion: the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.
42 U.S.C. § 1983.

1

On August 16, 2006, the plaintiff, Herbert McCoy, sued George Ginotoli, the Director of the South Carolina Department of Mental Health (SCDMH), John Connery, an employee of the SCDMH, and Jonathan Ozmint, the Director of the South Carolina Department of Corrections (SCDC).[2] McCoy has been involuntarily civilly committed to the SCDMH as a Sexually Violent Predator (SVP) pursuant to the South Carolina Sexually Violent Predator Act (SVP Act), S.C. Code Ann. § 44-48-10 *et. seq.* Plaintiff is in the Behavioral Disorders Treatment Program (BDTP) and is housed in the Edisto Unit at the Broad River Correctional Institution (BRCI) of the SCDC in Columbia, South Carolina. He complained that:

> "The Defendants, individually and officially, under color of state law, ordinance, regulation or policy, deprived the Plaintiffs of their rights secured by the S.C. and U.S. Constitutions. Said rights were well established prior to and during these actions of the Defendants. The Defendants intentionally, willfully, wantonly, and recklessly violated the rights of the Plaintiffs, by housing them within the confines of the Edisto Unit of Broad River Correctional Institution, an Institution established by the General Assembly for the confinements of persons convicted of such crimes designated by law. Such violations are protected by the Fourteenth Amendment Due Process and Equal Protection Clauses." (sic).

Complaint, Para. IV ("Statement of Claim"). Plaintiff did not

---

[2] This case is one of eighteen separate cases in which identical Complaints and Answers have been filed by the parties.

2

allege that his confinement is punitive.[3] He seeks equitable relief and damages.

On October 26, 2005, the plaintiff filed a motion for summary judgment and the defendants filed their own cross motion for summary judgment on November 29, 2005. On December 1, 2005, the plaintiff was provided a copy of the defendants' motion and was given an explanation of dismissal and summary judgment procedure as well as pertinent extracts from Rules 12 and 56 of the Federal Rules of Civil Procedure similar to that required by Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975). On December 15, 2005, the plaintiff filed a response in opposition to the defendants' motion. Hence, it appears consideration of the motions is appropriate.

## SUMMARY JUDGMENT STANDARD

Summary judgment should be granted when the record demonstrates that the requirements of Rule 56(c) have been met. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). Summary judgment is mandated where the party opposing the motion has failed to establish the existence of an element essential to his case, and on which he bears the burden of proof. Id., 477 U.S. at 322.

---

[3] Many of the plaintiffs in these cases challenging the place of their confinement previously filed challenges to their confinement itself as punitive; the lead case was Kollyns v. Bennington, No. 3:04-CV-01941. Judge Joseph Anderson dismissed all the cases on the merits and the Fourth Circuit affirmed. 157 Fed.Appx. 658, 2005 WL 3370062 (4th Cir. 2005).

The party seeking summary judgment must inform the court of the basis for its motion, and identify those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party, however, need not offer proof that negates the opponent's claim; rather, as to issues on which the party opposing the motion has the burden of proof at trial, the party seeking summary judgment need only point to an absence of evidence to support the opponent's claim.  The party opposing summary judgment must then point to facts evidencing a genuine issue for trial.  Fed. R. Civ. P. 56(c); see also, Anderson v. Liberty Lobby. Inc., 477 U.S. 242, 252 (1986).

Summary judgment should not be denied merely because the plaintiff raises a "metaphysical doubt" as to the material facts. Mathushita Electrical Industrial Co., Ltd v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  Likewise, "unsupported speculation is not sufficient to defeat a summary judgment motion." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987).  If the plaintiff's evidence does not raise a genuine issue as to a material fact, then summary judgment is proper for the defendants.  See, Anderson, 477 U.S. at 249-50 (where evidence is not significantly probative, then summary judgment is proper). Furthermore, even as to a material fact, an issue is genuine only where the record establishes that the fact-finder could find, by

4

a preponderance of the evidence, that the plaintiff is entitled to judgment in his favor. Id., 477 U.S. at 252.

**FACTS AND DISCUSSION**

Plaintiff is in the custody of the SCDMH under provisions of the South Carolina SVP Act. In 1998, the South Carolina General Assembly enacted the South Carolina SVP Act, S.C. Code Ann. § 44-48-10 et. seq. The South Carolina SVP Act provides for the involuntary civil commitment to the custody of the SCDMH of sexually violent predators who are "mentally abnormal and extremely dangerous." S.C. Code Ann. § 44-48-20.

The General Assembly also authorized the SCDMH and the SCDC to enter into an interagency agreement whereby the South Carolina SVPs may be confined in a secure facility within the SCDC. Specifically, the housing of SVPs in South Carolina is governed by S.C. Code Ann. § 44-48-100(A), which provides in pertinent part:

> The Department of Mental Health may enter into an interagency agreement with the Department of Corrections for the control, care, and treatment of these persons. A person who is in the confinement of the Department of Corrections pursuant to an interagency agreement authorized by this chapter must be kept in a secure facility and must, if practical and to the degree possible, be housed and managed separately from offenders in the custody of the Department of Corrections.

Plaintiff has not alleged noncompliance by the defendants with the terms of this statute. He agrees that he may be

5

lawfully confined by the SCDC, but that the South Carolina Constitution prevents his being housed **"within"** an institution established for the confinement of all persons convicted of such crimes as may be designated by law. (Plaintiff's Opposition to Defendants' Motion for Summary Judgment) (emphasis in the original). Plaintiff is housed within the BRCI in Columbia, South Carolina. Plaintiff contends that he may legally be confined on SCDC property, but that it is unconstitutional to house him in a correctional institution. Plaintiff reasons that the South Carolina Constitution Article 12, § 2, precludes his being housed at the BRCI itself. The South Carolina Constitution Article 12, § 2 provides:

> SECTION 2. Institutions for confinement of persons convicted of crimes.
>
> The General Assembly shall establish institutions for the confinement of all persons convicted of such crimes as may be designated by law, and shall provide for the custody, maintenance, health, welfare, education, and rehabilitation of the inmates.

Put another way, the plaintiff claims that the "S.C. Constitution Article 12, Section 2, requires and mandates that only persons convicted of crimes [are] to be housed within the confines of institutions established for that purpose, and such persons are to be construed and labeled as inmates." (Plaintiff's Reply brief, "Conclusion"). Since the plaintiff is not an

6

inmate, the defendants may not house him in a prison as it is doing presently, according to the plaintiff.

This is not a difficult case. A plain reading of Article 12 § 2 does not contain a requirement that correctional facilities be used only to house persons convicted of crimes. Instead, the state constitutional provision leaves open the possibility of using such facilities for the secure housing of other classes of persons, including persons found to be sexually violent predators.

Plaintiff's reliance on the use of the word "inmate" in the state constitutional provision is likewise unavailing. To the extent that the word "inmate" is used in the constitutional provision to refer to persons housed in correctional facilities, again, its use in that provision does not exclude the possibility that other persons, whose status may be defined differently under state law, may also be housed in such institutions pursuant to other provisions of state law. The South Carolina Constitution does not mandate what the plaintiff claims it does. Plaintiff is simply incorrect in his interpretation.

Next, Plaintiff appears to additionally claim that this alleged violation of the state constitution is sufficient to establish a violation of the due process and equal protection

7

clauses of the Fourteenth Amendment to the United States Constitution.[4]

While it appears that the state law claim is without merit, nevertheless, the alleged violation of state law even if proven, standing alone, would not establish a violation of federal law. The Fourth Circuit Court of Appeals has consistently stated the general rule that "violations of state law are insufficient by themselves to implicate the interests that trigger a due process claim." Weller v. Dep't of Soc. Servs., 901 F.2d 387, 392 (4th Cir. 1990); see also, Wofford v. Evans, 390 F.3d 318, 325 (4th Cir. 2004), Vander Linden v. Hodges, 193 F.3d 268, 276 (4th Cir. 1999), quoting Snowden v. Hughes, 321 U.S. 1, 11 (1944) ("the illegality [or alleged illegality] of a state action under state law 'can neither add to nor subtract from its [federal] constitutional validity.'"). As the Court of Appeals for the Seventh Circuit has explained, "[a] state ought to follow its law, but to treat a violation of state law as a violation of the Constitution is to make the federal government the enforcer of state law. State rather than federal courts are the appropriate institutions to enforce state rules." Archie v. Racine, 847 F.2d 1211, 1217 (7th Cir. 1988) (en banc).

---

[4] To the extent Plaintiff is attempting to allege a free-standing violation of 42 U.S.C. § 1983, that claim should be dismissed because § 1983 creates no substantive rights by itself. See, Albright v. Oliver, 510 U.S. 266, 271, 114 S.Ct. 807 (1994).

8

Still, state law is not irrelevant to a complete due process clause analysis in a § 1983 case. The substantive rights provided by the Federal Constitution define only the minimum: state law may recognize liberty interests and procedural protections more extensive than those independently protected by the Federal Constitution. Mills v. Rogers, 457 U.S. 291, 300, 102 S.Ct. 2442 (1982); Meachum v. Fano, 427 U.S. 215, 223-27, 96 S.Ct. 2532, 2537-39 (1976). When the state creates such a liberty interest, it may take it away only if the decision to do so is accompanied by the minimum procedural protections that are required by the Constitution. See, Vitek v. Jones, 445 U.S. 480, 488, 100 S.Ct. 1254 (1980). Once state law defines the substance of the liberty interest, federal constitutional law establishes the minimum procedures required to deny the liberty interest.

"[T]he substantive issue involves a definition of th[e] protected constitutional interest, as well as identification of the conditions under which competing state interests might outweigh it. The procedural issue concerns the minimum procedures required by the Constitution for determining that the individual's liberty interest actually is outweighed in a particular instance." Washington v. Harper, 494 U.S. 210, 220, 110 S.Ct. 1028 (1990) (quoting Mills, 457 U.S. at 299, 102 S.Ct. 2442) (citations omitted).

9

For a liberty interest to be created by state law, the state law must place "substantive limits on official discretion." Olim v. Wakinekona, 461 U.S. 238, 249, 103 S.Ct. 1741 (1983). That is, the statute or regulation must use "language of an unmistakably mandatory character, requiring that certain procedures 'shall,' 'will,' or 'must' be employed absent specified substantive predicates." Hewitt v. Helms, 459 U.S. 460, 471-72, 103 S.Ct. 864 (1983). "[A] liberty interest is created only where the state regulation in question contains 'specific directives to the decisionmaker that if the regulations' substantive predicates are present, a particular outcome must follow... .'" Kentucky Department of Corrections v. Thompson, 490 U.S. 454, 463, 109 S.Ct. 1904 (1989).

Here, the constitutional section in question contains no "language of an unmistakably mandatory character" and it lacks any substantive predicates to limit the discretion of officials. It was not promulgated to guide officials in administering the care and control of a SVP; it simply was not designed to confer rights on SVPs. Rather it empowers the SCDC to build prisons to house inmates and does not preclude the use of a prison to house others. Since South Carolina did not create a liberty interest for SVPs in Article 12 §2 of the state constitution, no Fourteenth Amendment protections run to Plaintiff. No violation of the federal constitution has occurred.

## CONCLUSION

Accordingly, for the aforementioned reasons, it is recommended that the plaintiff's summary judgment motion be denied, that the defendants' summary judgment motion be granted, and the action be ended.

>Respectfully Submitted,
>
>*/s/ Robert S. Carr*
>Robert S. Carr
>United States Magistrate Judge

Charleston, South Carolina

May 9, 2006

<u>Notice of Right to File Objections to Magistrate Judge's "Report and Recommendation"</u>
&
The **Serious Consequences** of a Failure to Do So

The parties are hereby notified that any objections to the attached Report and Recommendation (or Order and Recommendation) must be filed within **ten (10) days** of the date of its filing. 28 U.S.C. § 636 and Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three days for filing by mail. Fed. R. Civ. P. 6. Based thereon, this Report and Recommendation, any objections thereto, and the case file will be **delivered to a United States District Judge** fourteen (14) days after this Report and Recommendation is filed. Advance Coating Technology, Inc. v. LEP Chemical, Ltd., 142 F.R.D. 91, 94 & n. 3, 1992 U.S.Dist. LEXIS® 6243 (S.D.N.Y. 1992). A magistrate judge makes only a recommendation, and the authority to make a final determination in this case rests with the United States District Judge. See Mathews v. Weber, 423 U.S. 261, 270-271 (1976); and Estrada v. Witkowski, 816 F. Supp. 408, 410, 1993 U.S.Dist. LEXIS® 3411 (D.S.C. 1993).

During the ten-day period, but <u>not</u> thereafter, a party must file with the Clerk of Court specific, written objections to the Report and Recommendation, if he or she wishes the United States District Judge to consider any objections. **Any written objections must *specifically identify* the portions of the Report and Recommendation to which objections are made *and* the basis for such objections.** See Keeler v. Pea, 782 F. Supp. 42, 43-44, 1992 U.S.Dist. LEXIS® 8250 (D.S.C. 1992); and Oliverson v. West Valley City, 875 F. Supp. 1465, 1467, 1995 U.S.Dist. LEXIS® 776 (D.Utah 1995). Failure to file specific, written objections shall constitute a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the United States District Judge. See United States v. Schronce, 727 F.2d 91, 94 & n. 4 (4th Cir.), *cert. denied*, Schronce v. United States, 467 U.S. 1208 (1984); and Wright v. Collins, 766 F.2d 841, 845-847 & nn. 1-3 (4th Cir. 1985). Moreover, if a party files specific objections to a portion of a magistrate judge's Report and Recommendation, but does not file specific objections to other portions of the Report and Recommendation, that party waives appellate review of the portions of the magistrate judge's Report and Recommendation to which he or she did not object. In other words, a party's failure to object to one issue in a magistrate judge's Report and Recommendation precludes that party from subsequently raising that issue on appeal, even if objections are filed on other issues. Howard v. Secretary of HHS, 932 F.2d 505, 508-509, 1991 U.S.App. LEXIS® 8487 (6th Cir. 1991). *See also* Praylow v. Martin, 761 F.2d 179, 180 n. 1 (4th Cir.)(party precluded from raising on appeal factual issue to which it did not object in the district court), *cert. denied*, 474 U.S. 1009 (1985). In Howard, <u>supra</u>, the Court stated that general, non-specific objections are *not* sufficient:

> A general objection to the entirety of the [magistrate judge's] report has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the [magistrate judge] useless. * * * This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act. * * * We would hardly countenance an appellant's brief simply objecting to the district court's determination without explaining the source of the error.

*Accord* Lockert v. Faulkner, 843 F.2d 1015, 1017-1019 (7th Cir. 1988), where the Court held that the appellant, who proceeded *pro se* in the district court, was barred from raising issues on appeal that he did not specifically raise in his objections to the district court:

> Just as a complaint stating only 'I complain' states no claim, an objection stating only 'I object' preserves no issue for review. * * * A district judge should not have to guess what arguments an objecting party depends on when reviewing a [magistrate judge's] report.

*See also* Branch v. Martin, 886 F.2d 1043, 1046, 1989 U.S.App. LEXIS® 15,084 (8th Cir. 1989)("no de novo review if objections are untimely or general"), which involved a *pro se* litigant; and Goney v. Clark, 749 F.2d 5, 7 n. 1 (3rd Cir. 1984)("plaintiff's objections lacked the specificity to trigger *de novo* review"). **This notice, hereby, apprises the parties of the consequences of a failure to file specific, written objections.** See Wright v. Collins, supra; and Small v. Secretary of HHS, 892 F.2d 15, 16, 1989 U.S.App. LEXIS® 19,302 (2nd Cir. 1989). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections addressed as follows:

**Larry W. Propes, Clerk**
**United States District Court**
**Post Office Box 835**
**Charleston, South Carolina 29402**